UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 93-5486
_____

UNITED STATES of AMERICA,

                                        Plaintiff-Appellee,

                    versus

FARICE DAIGLE, JR.

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

(February 14, 1995)

Before POLITZ, Chief Judge, GARWOOD and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

Pursuant to a plea bargain, Farice Daigle, Jr. (Daigle) pled guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). He appeals, arguing, among other things, that the trial court's participation in the plea agreement negotiations rendered his guilty plea involuntary. We conclude that the trial court did participate in the plea negotiations in violation of Rule 11(e)(1) of the Federal Rules of

_____

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

Criminal Procedure and that the error was not harmless. Finding a reversible error, we therefore vacate Daigle's conviction and his sentence.

## I. FACTS AND PROCEDURAL HISTORY

Daigle and nine codefendants were charged by indictment with several narcotics offenses. Daigle pled not guilty. Subsequently, Daigle and four codefendants went to trial on a superseding indictment. On the second morning of trial, Daigle decided to accept the government's offer to plead guilty to one count of possession with intent to distribute 1550 grams of cocaine in violation of 21 U.S.C. § 841(a)(1).

Prior to the judge accepting his plea in court, the prosecutor, Daigle, the defense attorney, and the trial judge met in the judge's chambers (at Daigle's request) for an off-the-record discussion regarding the plea agreement and the length of sentence. During this discussion, the trial judge informed Daigle that he followed the sentencing recommendation of the government approximately 90% of the time. Daigle subsequently entered his plea of guilty in open court.

The written plea agreement expressly provides that it is pursuant to Rule 11(e)(1)(B), which provides that the sentencing court is not bound by the government's sentencing recommendation. The plea agreement further provides that the defendant agrees to cooperate, which specifically included testifying truthfully against his codefendants, if requested. In return, the government agreed to: dismiss the remaining counts; not seek a sentencing

2

enhancement for prior convictions; recommend (1) an "acceptance of responsibility" reduction and (2) a sentence at the lowest end of the guideline range. Additionally, the agreement provided that, in its discretion, the government may file a motion requesting the court to downwardly depart based on the "substantial assistance" of Daigle.[1] The district court, however, would have the final decision whether to accept the government's sentencing recommendation.

Daigle informed his codefendants of his decision to plead guilty, and two of them pled guilty along with him. Daigle testified against the two remaining codefendants. The government later contended that Daigle's testimony was inconsistent with that of the other codefendants and the physical evidence. Consequently, the government refused to file a motion for downward departure based on substantial assistance.

Daigle filed a motion to enforce the plea agreement, which the court initially denied. The district court eventually held an evidentiary hearing and determined that Daigle had provided substantial assistance to the government. The court also determined that, although it could not compel the government to file a U.S.S.G. §5K1.1 motion for downward departure, it would enforce the plea agreement based on its finding that Daigle had substantially assisted the government. In other words, the court

---

[1] The agreement further provided that if the government filed a motion for downward departure based on substantial assistance, it would recommend a sentence of 108 months. If Daigle's cooperation was "extremely helpful," the government may recommend a greater downward departure.

would act as if the government had filed a motion for downward departure. Nevertheless, the court refused to follow the hypothetical recommendation (108 months) and instead, imposed a sentence of 188 months.

II. WHETHER THE TRIAL JUDGE PARTICIPATED IN THE PLEA NEGOTIATIONS IN VIOLATION OF RULE 11(e)(1).

Daigle contends that prior to entering his guilty plea, the trial judge entered into the plea negotiations in violation of Rule 11(e)(1) of the Federal Rules of Criminal Procedure. Rule 11(e)(1) provides that "[t]he court shall not participate in any such [plea negotiation] discussions." Although a district court may reject a plea agreement and express its reasons for doing so, "Rule 11(e)(1) prohibits absolutely a district court from `all forms of judicial participation in or interference with the plea negotiation process.'" United States v. Miles, 10 F.3d 1135, 1139 (5th Cir. 1993) (quoting United States v. Adams, 634 F.2d 830, 835 (5th Cir. 1981)) (other citations omitted). "Rule 11(e)(1) simply commands that the judge not participate in, and remove him or herself from, any discussion of a plea agreement that has not yet been agreed to by the parties in open court." Miles, 10 F.3d at 1140 (quoting United States v. Bruce, 976 F.2d 552, 556 (9th Cir. 1992)) (emphasis added).

As we recently explained in Miles, there are important reasons for the rule admitting no exceptions. First, it diminishes the possibility of judicial coercion of a guilty plea, regardless whether the coercion would actually result in an involuntary guilty

4

plea. 10 F.3d at 1139. Second, the judge's involvement in the negotiations is apt to diminish the judge's impartiality. By encouraging a particular agreement, the judge may feel personally involved, and thus, resent the defendant's rejection of his advice. <u>Id.</u> Third, the judge's participation creates a misleading impression of his role in the proceedings. <u>Id.</u> The judge's role seems more like an advocate for the agreement than a neutral arbiter if he joins in the negotiations. Because of these potential problems, "Rule 11(e)(1) draws a bright line, prohibiting judicial participation in plea negotiations." <u>Id.</u>

The colloquy between the judge and Daigle at the guilty plea hearing reveals that there was an off-the-record discussion in chambers among the parties and the judge regarding Daigle's guilty plea and sentence. Daigle contends that, during the in chambers discussion, the trial judge indicated that he would most likely follow any sentence recommendation by the government, which to Daigle meant a "cap" of nine years imprisonment. Daigle cites the following comment the judge subsequently made at the plea hearing, "All right, so if nine years is what y'all agreed upon and that's the recommendation made to me, and there is substantial cooperation, that's the cap of nine years, okay?" This statement strongly supports Daigle's contention that he understood the court to be indicating a "cap" of nine years if the government so recommended.

In <u>United States v. Werker</u>, 535 F.2d 198, 203 (2nd Cir.),

5

cert. denied, 429 U.S. 926, 97 S.Ct. 330 (1976),[2] the Second Circuit opined that a "judge's indication of sentence necessarily constitutes `participation in such discussions." We find the Second Circuit's reasoning in Werker persuasive. During Daigle's guilty plea hearing, the court acknowledged that it previously had advised Daigle in chambers that if he "fully cooperated, that 90 percent of the time I will follow the recommendation of the U.S. Attorney." Such an indication of sentence constitutes participation. Accordingly, the judge's conduct violated the bright line of Rule 11(e)(1) which prohibits any judicial participation in plea negotiations.

That, however, is not the end of the inquiry. Although judicial participation in plea negotiations is an error implicating a core concern of Rule 11, it nonetheless is subject to the harmless error analysis. Miles, 10 F.3d at 1140-41 (citing United States v. Johnson, 1 F.3d 296 (5th Cir. 1993) (en banc)).

The government argues that any Rule 11 violation was harmless because Daigle "was looking at a minimum sentence of twenty years if he were convicted of violating 21 U.S.C. § 848 and five years consecutive to all sentences if convicted of 18 U.S.C. § 924(c) at trial." The focus, however, of the harmless error inquiry is whether the district court's flawed compliance with Rule 11 may reasonably be viewed as having been a material factor affecting the defendant's decision to plead guilty. Johnson, 1 F.3d at 302. Indeed, as the government candidly admits, Daigle requested to meet

---

[2] We cited the Werker opinion in both Miles and Adams.

with the trial court because he was concerned "that the agreement did not guarantee the specific nine year cap he wanted but left it within the U.S. Attorney's discretion."  The government further acknowledges "that the sole purpose of the meeting with the judge was to gain information concerning the judge's probable response to a recommendation by the AUSA [prosecutor]."  Here, it is apparent that Daigle viewed the "cap" of nine years imprisonment as a material factor in his decision to plead guilty.  Thus, it cannot be said that the trial court's participation in the plea negotiations was harmless.

II.  WHETHER DAIGLE IS ENTITLED TO SPECIFIC PERFORMANCE.

Daigle requests specific performance of the plea agreement, which he contends the district court modified when it participated in his plea negotiations.  A defendant is entitled to specific performance of a plea agreement when the agreement has been breached.  United States v. Watson, 988 F.2d 544, 553 (5th Cir. 1993), cert. denied, __ U.S. __, 114 S.Ct. 698 (1994). Daigle does not show a breach, but instead relies on his own mistaken impression of a 108-month cap which he claims was created by the plea bargaining process.  He is not entitled to specific performance.

Because of our Rule 11 holding, we do not reach any of Daigle's remaining contentions.  Finally, "in order to extend the prophylactic scheme established by Rule 11,"  this case will be assigned to a different judge on remand.  Miles, 10 F.3d at 1142 (citation, internal quotation marks, and footnote omitted).

### CONCLUSION

For the reasons stated above, Daigle's conviction and his sentence are **VACATED**; and the case **REMANDED** for further

proceedings.