# United States Court of Appeals for the Fifth Circuit

———————

No. 23-20452

———————

United States Court of Appeals
Fifth Circuit

**FILED**

May 28, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Darion Benjamin Woods,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CR-397-1

———————————————————————

Before Higginson, Willett, and Oldham, *Circuit Judges*.

Per Curiam:

Darion Benjamin Woods pleaded guilty to damaging property of a foreign official in the United States. He was sentenced to an above-Guidelines sentence of 30 months in prison and 3 years of supervised release. He appeals his sentence as substantively unreasonable and challenges an unpronounced condition of supervised release in the written judgment. We AFFIRM as modified.

I

Woods and his co-defendant Christin Brinkley broke into the British Consul General's family home in Houston, Texas. Security footage from the home showed Woods driving a U-Haul truck through the home's security gate, entering the property, and carrying items back to the truck. Woods and Brinkley stole two vehicles, a safe, high-end watches, jewelry, a television, the family's passports and personal documents, and a large amount of alcohol. They ransacked the home and caused over $50,000 in damages.

Law enforcement later found Woods and Brinkley at a residence with the stolen vehicles. Police found some of the stolen items inside the vehicles. Woods tried to flee on foot before he was arrested. He was charged with one count of damaging property occupied by a foreign official and pleaded guilty without a plea agreement.

The presentence investigation report (PSR) calculated Woods's Guidelines imprisonment range at 12 to 18 months based on a total offense level of 12 and a criminal history score of 2. Applying U.S.S.G. § 2B1.1(a)(2), which covers theft, stolen property, and property damage or destruction, the PSR assigned Woods a base offense level of 6. Because Woods was accountable for loss exceeding $40,000, the PSR recommended a 6-point enhancement under § 2B1.1(b)(1)(D). Woods received two criminal history points. He received one point for a marijuana-possession conviction in 2016 and one point for a misdemeanor theft conviction in 2020. But part of Woods's criminal history was unscored. He received no points for a juvenile conviction for felony burglary or a juvenile conviction for criminal mischief. And he had one unscored felony charge for possession of a controlled substance. He also had three charges pending at the time of sentencing: felony fraudulent use of identifying information, misdemeanor evading arrest, and felony burglary of a habitation. The latter two offenses arose from

this case. While Woods was detained awaiting trial, he assaulted his cellmate unprovoked. The PSR noted that this was not the first altercation Woods was involved in while in federal custody.

Relevant to the challenged supervised release condition, the PSR also discussed Woods's history with substance and alcohol abuse. Woods said he began consuming alcohol as a teenager, and although now he only "drinks on rare occasions," when he does, "it is excessive." At age 17, Woods was court ordered to attend Alcoholics Anonymous sessions for about six months. He began using cocaine as a teenager and eventually progressed to daily use, although he said the last time he used cocaine was over a year before his arrest for this offense.

The PSR recommended that Woods "comply with the Mandatory and Standard Conditions of Supervision as approved by the Judicial Conference and adopted by [the] Court under General Order No. 2017-01, and [that he] shall abide by any mandatory condition(s) required by law." As for special conditions, it recommended mental-health treatment and substance-abuse testing but did not reference any alcohol-related conditions.

Woods objected to the PSR, seeking a two-level reduction for acceptance of responsibility. He also argued that he did not believe that substance-abuse treatment was needed for alcohol dependency but conceded that he could benefit from treatment for dependence on controlled substances. He asked for a sentence of time served because he had spent about 13 months in federal custody by the time of his sentencing hearing.

At the sentencing hearing, the district court awarded Woods's requested two-point reduction for acceptance of responsibility and calculated the Guidelines range at 8–14 months based on a total offense level of 10 and criminal history category of II. But the court varied upwards and sentenced Woods to 30 months in prison. It concluded that this sentence was

No. 23-20452

"minimally necessary to satisfy the 3553(a) factors." And given Woods's prior criminal history, it concluded that "this [was] really a recidivism offense," so the variance was necessary "to protect the community." The court also ordered Woods to pay $56,636.15 in restitution and imposed a 3-year term of supervised release.

The district court orally pronounced the following supervised release conditions:

> [Woods is] to comply with the standard conditions adopted by this Court, abide by any mandatory conditions required by law.
>
> . . . .
>
> Let's see. Does he need drug – yes, he's got a possession of marijuana.
>
> All right. So, upon his release from imprisonment, then I'm going to require him to participate in a drug treatment program until he completes the program with the approval of the Probation Officer and Program Director. And while in the program, he's not to consume alcohol excessively.

The district court also ordered Woods to participate in a mental health treatment program.

The written judgment lists three special conditions of supervision: (1) Woods must "refrain from the excessive use of alcohol"; (2) he must participate in mental-health treatment; and (3) he must participate in substance-abuse treatment.

Woods timely appealed. He argues that his above-Guidelines sentence is substantively unreasonable and that the condition in written judgment that he must "refrain from the excessive use of alcohol" conflicts with the oral pronouncement that "*while in the program*, he's not to consume alcohol excessively."

## II

We first address the reasonableness of Woods's above-Guidelines sentence. Woods preserved this challenge by requesting a lower sentence than the one ultimately imposed. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020). Woods challenges only the substantive reasonableness of his sentence, which we review for abuse of discretion. *Id.* (citing *Gall v. United States*, 552 U.S. 38, 56 (2007)). Our review is "highly deferential." *United States v. Fraga*, 704 F.3d 432, 439 (5th Cir. 2013). We will not reverse the district court's sentence merely because we would "have concluded that a different sentence was appropriate." *Id.*

In conducting this review, we must consider "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. While "[t]he 'Guidelines should be the starting point and the initial benchmark' for sentencing, . . . '[a] deviation from the Guidelines range will not alone make a sentence substantively unreasonable.'" *United States v. Hudgens*, 4 F.4th 352, 358 (5th Cir. 2021) (first quoting *Gall*, 552 U.S. at 49; then quoting *United States v. Rhine*, 637 F.3d 525, 529 (5th Cir. 2011)). And there is no presumption of unreasonableness for an above-Guidelines sentence. *Gall*, 52 U.S. at 51. We "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

When a district court imposes a non-Guidelines sentence, it "must articulate its reasons . . . more thoroughly, . . . and the reasons should be 'fact-specific and consistent with the factors enumerated in [§] 3553(a).'" *Hudgens*, 4 F.4th at 358 (quoting *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006)). "A non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that

should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Id.* (quoting *Smith*, 440 F.3d at 708).

Woods argues that his 30-month sentence is substantively unreasonable because the district court gave "undue, significant weight to the need for the sentence imposed to protect the public from [Woods's] further crimes." He claims the weight given to this factor was unwarranted given his longstanding substance abuse and mental-health problems that he says "will be addressed when he participates in drug- and mental-health treatment programs, which the court ordered as special conditions of his supervised release." He also argues that his sentence is unreasonable because it is "16 months (or 114%) higher than the top of the applicable advisory Guidelines range of imprisonment (8 to 14 months)," and at the time of sentencing, he had spent 13 months in federal custody. We disagree.

First, the district court gave significant but not undue weight to the need to protect the public. The district court was reasonably concerned that Woods's criminal history category "substantially underrepresent[ed] [the] seriousness of his prior history conduct and likelihood of recidivism." Woods received no points for several offenses and three pending charges. "A defendant's criminal history is one of the factors that a court may consider in imposing a non-Guideline sentence." *Smith*, 440 F.3d at 709. This includes "juvenile adjudications not accounted for by the Guideline sentence." *Id.* And as the Government notes, Woods victimized a member of the public in several of his other convictions through theft or destruction of property.

The district court also reasonably considered that the nature of Woods's offense was "atypical" of other offenses under the applicable Guideline (theft or property damage or destruction) for which the base offense level is 6. By contrast, the base offense level for residential burglary

is 17. U.S.S.G. § 2B2.1. The background comment to the Guideline section for residential burglary explains that "[t]he base offense level for residential burglary is higher than for other forms of burglary because of the increased risk of physical and psychological injury." *Id.* § 2B2.1, cmt. (background). The victims of Woods's crime provided a statement expressing that they "do not feel safe anymore" and have had to "implement security features" and "completely transform the way that they've lived their lives." Thus, the district court reasonably concluded that the Guidelines range did not adequately account for the nature and circumstances of this offense, including the destruction it caused and the impact it had on the home's occupants.

The district court did consider Woods's "longstanding substance-abuse and mental-health problems," homelessness, and his allocution in which he apologized. But it was not unreasonable for the district court to vary upwards despite these factors given his criminal history and the nature of his offense. At this point, it is unclear that Woods's mental-health and drug-abuse problems will be addressed effectively by the supervised-release programs.

Second, the sentence is not unreasonable because it is "16 months (or 114%) higher than the top of the applicable Guidelines range." That the sentence "exceeds by several times the guideline maximum is of no independent consequence in determining whether the sentence is reasonable," but "it may indicate the unreasonableness of the departure [or deviation] viewed against the court's justification for that departure [or deviation]." *Smith*, 440 F.3d at 708 n.5 (alterations in original) (citation omitted). We have "previously upheld similarly 'major' upward variances." *Hudgens*, 4 F.4th at 359 (collecting cases); *United States v. Brantley*, 537 F.3d 347, 348 (5th Cir. 2008) (upholding a sentence "253% higher than the top of the Guidelines range"); *United States v. Jones*, 75 F.4th 502, 506 (5th Cir.

2023) (affirming sentence that exceeded the applicable Guideline range by about fifteen years). Woods's sentence is within the statutory maximum allowed for this offense. "[W]hether the variance exceeds the statutory maximum is a factor to be considered in determining a sentence's substantive reasonableness." *Hudgens*, 4 F.4th at 359 (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256–57 (11th Cir. 2015)). Here the statutory maximum is 5 years. 18 U.S.C. § 970(a).

Thus, Woods's above-Guidelines sentence does not "represent[] a clear error of judgment" by the district court. *Smith*, 440 F.3d at 708. The district court reasonably concluded that "a sentence within [the] Guidelines . . . would not satisfy [the § 3553(a) factors] given the particular nature of this burglary of a habitation[,] . . . the destruction that it caused," the impact on the victims, and that "the [pronounced] sentence . . . [was] minimally necessary in order to satisfy the 3553(a) factors." *See also United States v. Williams*, 517 F.3d 801, 809 (5th Cir. 2008) (similar).

## III

We next consider Woods's challenge to the supervised-release condition. Woods argues that the written condition that he "must refrain from the excessive use of alcohol," conflicts with the oral pronouncement that "while in the [drug-treatment] program, he's not to consume alcohol excessively." Woods contends that the written judgment is more burdensome than the oral pronouncement.

Because Woods "had no opportunity to object to or comment on the special condition[ ] . . . imposed in the written order," our review is for abuse of discretion. *United States v. Mireles*, 471 F.3d 551, 557 (5th Cir. 2006); *United States v. Diggles*, 957 F.3d 551, 559 (5th Cir. 2020) (en banc).

If the written judgment differs from the oral pronouncement, the oral pronouncement controls. *Diggles*, 957 F.3d at 557. "This pronouncement

rule applies to some supervised release conditions, but not all of them." *Id.* If a condition is required under the supervised release statute, 18 U.S.C. § 3583(d), "the court need not pronounce it" because "an objection [would be] futile." *Diggles*, 957 F.3d at 559. But "[i]f a condition is discretionary, the court must pronounce it to allow for an objection." *Id.*

"The key determination is whether the discrepancy between the oral pronouncement and the written judgment is a conflict or merely an ambiguity that can be resolved by reviewing the rest of the record." *Mireles*, 471 F.3d at 558. "[I]f . . . the difference between the two is only an ambiguity, we look to the sentencing court's intent to determine the sentence." *United States v. Bigelow*, 462 F.3d 378, 381 (5th Cir. 2006). A conflict exists "[i]f the written judgment broadens the restrictions or requirements of supervised release from an oral pronouncement." *Mireles*, 471 F.3d at 558.

Here, the written condition conflicts with the oral pronouncement because a requirement to refrain from the excessive use of alcohol *at all* broadens or is more burdensome than a requirement to refrain from the use of alcohol *while in the program*. *See United States v. Prado*, 53 F.4th 316, 319 (5th Cir. 2022) (concluding that a written judgment requiring a defendant to take all mental-health medications conflicted with the oral condition that the defendant should participate in a mental-health program so he could receive such medication); *cf. United States v. Overstreet*, No. 21-30527, 2022 WL 987184, at *1 (5th Cir. Mar. 31, 2022) (per curiam) (concluding that the written condition that the defendant "abstain from alcohol" conflicted with the oral pronouncement that the defendant "avoid the excessive use of alcohol" because the written condition was more burdensome than the oral pronouncement); *United States v. Adams*, No. 23-20361, 2024 WL 1008587, at *4 (5th Cir. Mar. 8, 2024) (per curiam) (concluding that the written condition that defendant "not . . . use or possess alcohol" conflicted with the oral condition that the defendant "refrain from excessive use of alcohol").

The Government argues that the challenged condition creates an ambiguity and not a conflict for two reasons. First, it argues that the alcohol condition in the written judgment is "essentially a standard condition" because Woods's history of substance abuse "triggered" the "special" conditions of supervised release in the Guidelines and the Southern District's standing order. But our en banc court rejected this type of argument in *Diggles*. There, we replaced the "mandatory," "standard," and "special" labels "for deciding when pronouncement is required . . . with section 3583(d)'s binary required/discretionary distinction." *Diggles*, 957 F.3d at 559 n.4. And we rejected the idea expressed in earlier cases that "[s]ometimes a condition labeled 'special' is not special after all; it may essentially be a standard condition that need not be pronounced." *Id.* at 557.

The Government argues that *Diggles* does not disturb its argument because the district court adopted the special conditions by referencing its standing order. Generally, a district court can satisfy the pronouncement requirement by referencing a court-wide or judge-specific standing order. *United States v. Baez-Adriano*, 74 F.4th 292, 298 (5th Cir. 2023). But "the mere existence of such a document is not enough for pronouncement. Rather, the court must orally adopt that list of conditions within the document when the defendant is in court and can object. And it must ensure that the defendant had a chance to read and review that list with counsel." *Id.* (internal quotation marks and citations omitted). That requirement wasn't satisfied here because the district court adopted only the standard conditions from the standing order—not the discretionary or special conditions.

The Southern District's standing order has "standard" conditions and "special conditions," which are discretionary. *See* S.D. Tex., Gen. Order No. 2017-01, at 2. The district court orally pronounced that Woods must "comply with the *standard conditions* adopted by this Court, [and] abide

by any mandatory conditions required by law." There are no alcohol-related conditions in the Southern District's standard conditions, and the PSR only recommended imposing the standing order's "standard" and "mandatory" conditions. Neither the district court nor the PSR mentioned the standing order's special alcohol-related condition. *Cf. United States v. Lozano*, 834 F. App'x 69, 71 (5th Cir. 2020) (per curiam) (noting that the challenged conditions appeared in the PSR "exactly as they appear[ed] in the judgment"). The Government's counterargument that any confusion about "which 'standard' conditions the district court was referring to, . . . creates an ambiguity" rather than a conflict is unpersuasive. There is nothing to suggest the written alcohol-related condition was standard.

Second, the Government argues that the record demonstrates the district court's intent to restrict excessive alcohol use throughout the entire supervision term because the district court ordered Woods to complete a substance-abuse program. This condition, it argues, "opened the door for the sentencing court to impose clarifying conditions related to alcohol and substance abuse, even if the specifics of those conditions appeared for the first time in the written judgment."

But Woods was not ordered to complete alcohol treatment—only drug treatment. In the cases the Government cites, the defendants needed to complete both drug and alcohol treatment. *See, e.g.*, *United States v. Guerra*, No. 22-40016, 2023 WL 4417287, at *3 (5th Cir. July 10, 2023) (per curiam); *United States v. Rodriguez-Barajas*, 483 F. App'x 934, 935 (5th Cir. 2012) (per curiam) (written condition that defendant "abstain from the use of alcohol and/or all other intoxicants during and after completion of treatment" did not conflict with oral pronouncement that defendant "participate in a program . . . for the treatment of narcotic, drug, or alcohol dependency"). We noted in *Guerra* that "it should go without saying that [a defendant] cannot use alcohol or drugs while in treatment for abusing those substances.

11

Indeed, permitting [a defendant] to use such substances during the period of treatment would defeat the very purpose of ordering alcohol- and substance-abuse treatment in the first place." *Guerra*, 2023 WL 4417287, at *2. The same logic cannot be applied here because the oral pronouncement already prohibited Woods from excessive use of alcohol *during the program*. The written judgment extended the prohibition beyond the initial time limitation, thus creating a conflict.

Under 28 U.S.C. § 2106, we "may affirm, modify, vacate, set aside or reverse any judgment . . . and may remand the cause and direct the entry of such appropriate judgment . . . or require such further proceedings to be had as may be just under the circumstances." We have discretion "to reform the judgment or to remand for the district court to do so." *United States v. Davalos*, No. 22-50763, 2023 WL 4533395, at *6 (5th Cir. July 13, 2023) (per curiam); *United States v. Hermoso*, 484 F. App'x 970, 973 (5th Cir. 2012) (per curiam).

Accordingly, we AFFIRM Woods's sentence as modified to reflect that while he is in the drug-treatment program, he's not to consume alcohol excessively.